## S. JOSEPH, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

### St. Louis Court of Appeals, June 3, 1913.

1. **COMMON CARRIERS: Interstate Commerce: Supremacy of Federal Laws.** The Interstate Commerce Act (24 Stat. at Large, 379; U. S. Comp. St. 1901, p. 3154) and its amendments, including the Carmack Amendment (34 Stat. at Large, 584; U. S. Comp. St. Supp. 1911, p. 1284), and the decisions of the Supreme Court of the United States construing the same, supersede all State regulations, provisions and policies with respect to the liability of carriers by railroad on account of interstate shipments.

2. ———: ———: **Damage to Shipment: Limitation of Time for Filing Claim.** Under the Interstate Commerce Act and its amendments, as construed by the Supreme Court of the United States, the provisions in a bill of lading of an interstate shipment, that claims for loss shall be made in writing, either at the point of delivery or shipment, within four months after delivery of the property, or, in case of failure to deliver, within four months after a reasonable time for delivery has elapsed, and if not so made, the carrier shall not be liable, is a valid limitation upon the carrier's common law liability; and, although all of the articles shipped in a box are not in the box when delivered, the delivery of the box is a delivery of the property, advising the shipper of the loss, so as to start the period within which claim for loss must be made.

3. ———: ———: ———: ———: **Bill of Lading Construed.** Where a bill of lading of an interstate shipment of a box of goods provided that claims for loss should be made in writing within four months after delivery of the property, or, in case of failure to deliver, within four months after a reasonable time for delivery had elapsed, and a part of the goods was missing when the box was delivered, the provision requiring four months' notice, and not the one requiring reasonable notice, was applicable; the delivery of the box being "a delivery of the property," within the meaning of the bill of lading.

Appeal from Hannibal Court of Common Pleas.—*Hon. Wm. T. Ragland*, Judge.

REVERSED.

*O. M. Spencer, Geo. A. Mahan, Albert R. Smith* and *Dulany Mahan* for appellant.

(1) One of the conditions of the bill of lading was, that "claims for loss, damage or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after the delivery of the property; or, in case of failure to make delivery, then within four months after reasonable time of delivery has elapsed. Unless claim is so made the carrier should not be liable." The evidence of both plaintiff and defendant show that no such claim was made, hence instruction No. 1 asked for by the defendant should have been given by the court. Dawson v. Railroad, 76 Mo. 514; Crow v. Railroad, 57 Mo. App. 141; McBeath v. Railroad, 20 Mo. App. 445; Grain Co. v. Railroad, 120 Mo. App. 203; Nairn v. Railroad, 126 Mo. App. 707. (2) The verdict is directly against defendant's instruction No. 2 given by the court. All of the evidence shows that the shipment of goods in controversy was delivered to the consignee on or about the 10th day of April, 1909, and that the claim was not made in writing or any other way to defendant company until August 21, 1909, more than four months later. Freeman & Hinsen v. Railroad, 118 Mo. App. 527; Brown v. Railroad, 18 Mo. App. 577; Smith v. Railroad, 112 Mo. App. 614.

*F. W. Neeper* for respondent.

(1) Findings of fact will not be disturbed when supported by substantial evidence, although the reviewing court would have found a different verdict on the same evidence. Van Meter v. Poole, 130 Mo. App. 433; Lenick v. Railroad, 141 Mo. App. 151. (2) The verdict conforms to the facts in the case and to instruction number 2 given by the court. There is no evidence showing that the shipment of goods in controversy, or at least that portion of same that is sued

upon herein, were delivered to consignee at any time, and therefore the notice given on August 21, 1909, was clearly within four months, the time named as one of the conditions in the alleged bill of lading. Grain Co. v. Railroad, 120 Mo. App. 203. (3) One of the conditions of the alleged bill of lading was that claims for loss, damage or delay must be made in writing to the carrier at the point of delivery or the point of origin within four months after the delivery of the property, or, in case of failure to make delivery, then within four months after reasonable time of delivery has elapsed. Unless claim is so made the carrier should not be liable. There is no evidence that the goods sued for ever were delivered and there is positive evidence showing that such goods were not delivered at any time. Therefore, instruction No. 1 asked for by defendants was properly refused by the court. Hardin Grain Co. v. Railroad, 120 Mo. App. 203; Nairn v. Railroad, 126 Mo. App. 707; Richardson v. Railroad, 62 Mo. App. 1. The testimony shows that the box in which the goods in question were shipped, was returned to the plaintiff over the M., K. & T. R. R., and the claim for loss and failure to make delivery was first made to that company; that it was promptly notified. In case of doubt, the action of the parties, when made to appear, will determine their intention and dissolve the doubt. Richardson v. Railroad, 62 Mo. App. 1.

ALLEN, J.—This is an action for damages accruing through the alleged loss of certain merchandise delivered by plaintiff to defendant for shipment from Hannibal, Missouri, to Chelsea, Oklahoma. The suit was instituted before a justice of the peace, where plaintiff had judgment, and in due time defendant perfected its appeal to the Hannibal Court of Common Pleas, where the cause was tried before the court and a jury, resulting in a verdict for plaintiff in the sum of $100. The court required plaintiff to remit a por-

tion thereof, which was done, and judgment was entered accordingly, from which defendant has appealed to this court.

Plaintiff is engaged in the mercantile business in Hannibal, Missouri, and the evidence discloses that on April 2, 1909, he delivered to defendant at its freight depot at Hannibal, Missouri, a box of dry goods for shipment by defendant to Chelsea, Oklahoma, and to be there delivered to one H. Slyman, the consignee named in the bill of lading. The box in question was delivered by the defendant to the consignee at said point of destination on or about April 10, 1909. Slyman, the consignee, took the same to the home of one, Lyon, with whom he was boarding, and opened it in the presence of the latter and examined the contents. There were no marks on the box indicating that it had been opened, but it was found to be only about one-fourth full. Lyon made a list of the shortgage according to the invoice sent to the consignee by plaintiff, which was thus found to be $83.74; which list he at once mailed to defendant. The consignee testified that he also telephoned plaintiff at Hannibal on the day the box was received and opened. He received the box on Saturday, and Monday reshipped it and its contents to plaintiff at Hannibal.

The bill of lading under which the goods were originally shipped over defendant's line of railroad contained the following clause:

"Claims for loss, damage or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made the carrier shall not be liable."

It appears that after the box, containing such goods as were not lost, was returned to plaintiff, the latter filed a claim for his loss or damage with another

railroad over whose line the same had been returned to him from Chelsea. No notice was given to the defendant of any claim for loss or damage until August 21, 1909, more than four months after the delivery of the box to the consignee at Chelsea, Oklahoma; and defendant insists that for this reason a demurrer to the evidence interposed by it at the close of plaintiff's case should have been sustained.

This being an interstate shipment, nothing need be said as to the rule of decision prevailing in this State with respect to the validity and enforcement of such a clause in a bill of lading. The policy of any State with respect to such limitations upon the carrier's common law liability, whether expressed in its Constitution, by its legislative enactments, or through the decisions of its courts, is no longer a matter of any consequence, in so far as it pertains to interstate shipments. Recent decisions of the Supreme Court of the United States make it clear that Congress, through the enactment of the Interstate Commerce Act, and the amendments thereto, including what is known as the Carmack Amendment, has taken complete possession of the subject of the liability of carriers by railroad on account of interstate shipments, and that such legislation, and the decisions of the Supreme Court of the United States construing the same, supersede all State regulations, provisions and policies with respect to this subject, notwithstanding the language of the proviso to the Carmack Amendment. [See Adams Express Co. v. Croninger, 226 U. S. 491; Chicago, Burlington & Quincy R. Co. v. Miller, 226 U. S. 513; Chicago, St. Paul, etc., Ry. Co. v. Latta, 226 U. S. 519; Kansas City Southern R. Co. v. Carl, Advance Sheets, 227 U. S. 391; M., K. & T. R. Co. v. Harriman Bros. Advance Sheets, 227 U. S. 397; American Silver Mfg. Co. v. Wabash R. R. Co., 174 Mo. App. 184.]

Reference to the cases which we have cited above will disclose that the validity of such a clause in a bill

of lading for an interstate shipment must be determined exclusively with regard to the Federal law upon the subject as expounded by the recent decisions of the United States Supreme Court.

And we regard the point here in controversy as entirely settled and foreclosed by the decision in M., K. & T. R. Co., v. Harriman Brothers, supra, where it is held that a stipulation in a bill of lading covering an interstate shipment, providing that no suit shall be brought after the lapse of ninety days from the happening of any loss or damage is valid and enforceable; and that State statutes declaring void any contract attempting to thus shorten the period of limitations are ineffectual, inasmuch as all such State laws are superseded by the Federal law, in so far as they pertain to or affect interstate shipments. Following Adams Express Co. v. Croninger, supra, it is held that "the liability imposed by the statute is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence." And such a stipulation was held to be just and reasonable, and not within the exemption forbidden.

With this ruling before us, which is controlling authority where the shipment is interstate, the clause in question in the bill of lading here involved must be held to be a valid limitation upon the carrier's common law liability. It provides that all claims must be made in writing within four months after delivery of the property, or in case of failure to make delivery then within four months after a reasonable time for delivery has elapsed. If by a stipulation in a bill of lading the time for bringing suit may be limited to ninety days, it must follow that a provision is valid which requires written notice of the claim to be given

within four months, and that a failure to comply therewith is fatal to a recovery.

No notice was given defendant of plaintiff's claim until about four months and eleven days after the delivery of the box to the consignee named in the bill of lading. Plaintiff therefore cannot maintain this action, unless it be, as is contended by plaintiff, that the period of four months in question did not begin to run from the day that the box was delivered to the consignee, for the reason that the particular goods for the loss of which plaintiff prosecutes the suit, were not, as is claimed, contained in the box when delivered; and that hence there was no "delivery of the property" within the meaning of this clause of the bill of lading, by reason of which the four months period would begin to run only "after a reasonable time for delivery has elapsed."·

We must rule this point against the respondent; for this provision in the contract of affreightment must be construed and applied to the state of facts disclosed by the evidence, with regard to the manifest purpose and intent of the language employed. It is clear that it is intended that the period of four months shall begin to run either from the time such delivery is made as gives the shipper, or the consignee, actual notice of the loss or damage, or in case of a total failure to deliver then after a reasonable time for delivery has elapsed. In the instant case all of the goods were packed in one box, which the carrier undertook to transport and which it did deliver to the consignee. The latter, on the very day on which he received the box, telephoned plaintiff, advising him that some of the goods were missing; and the witness Lyon promptly wrote plaintiff in regard thereto, accompanying the letter with a list of the missing articles. There is no pretense that plaintiff was not thus fully and promptly advised of the alleged loss. The box itself was delivered, in apparently good order, its appearance not

indicating that it had been opened or its contents disturbed. Certainly, under such circumstances, it could not be held that the four months' period did not begin to run until the articles alleged to have been missing from the box were delivered, or until a reasonable time for delivering them had elapsed. Obviously the very purpose of the notice, in such a case, is that the carrier may be advised that some of the goods are missing, and to enable it to make a timely investigation of the claim, and trace, if possible, the missing articles.

Respondent's contention is that the clause in question in the bill of lading, requiring written notice to the carrier within four months "after delivery of the property," means after the delivery of the portion of the shipment which it is alleged was lost and for the value of which a recovery is sought. But under the facts of this case, to give such construction to the language thus used would be to lose sight of the very object and purpose of requiring such notice to be given. Whatever construction might be placed upon the language in question under a different state of facts, we think it clear that where, as in this case, the box which was supposed to contain all of the goods shipped was delivered, and the claim is that a part of the contents thereof were lost, such delivery of the box containing a portion of the goods is a "delivery of the property" within the meaning of the clause in the bill of lading. Upon such delivery being made certainly the consignee is at once enabled to determine the extent of the loss or damage, and it would be altogether unreasonable to suppose that he, or the shipper, when advised of the loss, would delay in notifying the carrier in expectation of the delivery of the missing articles.

In the case before us it appears that plaintiff's failure to give notice in writing to the defendant of his claim came about through inadvertence on his part, he having filed his claim against another carrier over

whose railway the box had been reshipped to him from Chelsea, Oklahoma. This, however, is plaintiff's misfortune, since we cannot take into consideration his mistake in the premises, in disposing of this question.

For the reasons given above the judgment of the circuit court must be reversed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.