FRANK J. DIETZ, APPELLANT, v. SOUTHERN PACIFIC RAILWAY COMPANY, A CORPORATION, *alias* SOUTHERN PACIFIC COMPANY; UNION PACIFIC RAILWAY COMPANY, A CORPORATION, *alias* UNION PACIFIC SYSTEM, AND WABASH RAILWAY COMPANY, A CORPORATION, RESPONDENTS.—28 S. W. (2d) 395.

St. Louis Court of Appeals. Opinion filed May 6, 1930.

40

*Smith & Pearcy* for appellant.

*Carter, Jones & Turney* for respondent Southern Pacific Company.

42

*T. M. Lillard* and *Abbott, Fauntleroy, Cullen & Edwards* for respondent Union Pacific Railway Company, a corporation, alias Union Pacific System.

*Homer Hall* for Wabash Railway Company, respondent.

BENNICK, C.—This is an action by plaintiff to recover the value of certain baggage claimed to have been lost in the course of transportation from San Francisco, California, to St. Louis, Missouri. The defendants named were Southern Pacific Railway Company, the initial carrier; Union Pacific Railway Company, the connecting or intermediate carrier; and Wabash Railway Company, the terminal or delivering carrier. At the close of plaintiff's case, demurrers interposed by defendants Union Pacific Railway Company and Wabash Railway Company were sustained, following which plaintiff took an involuntary nonsuit as to such defendants. The trial pro-

ceeded against defendant Southern Pacific Railway Company alone, and resulted in a verdict of the jury for such company. Timely motions to set aside the involuntary nonsuit and for a new trial were filed by plaintiff, and overruled by the court, and in due course he has brought the case here on appeal.

The petition set up that on September 2, 1920, plaintiff checked the baggage in question in the city of San Francisco, for delivery to him in the city of St. Louis; that at the time of checking the same, he paid to the agent of the Southern Pacific Railway Company the required amount of excess charges, by reason whereof such company undertook to transport his baggage, and deliver the same to him at St. Louis, or upon failure to make delivery, to be liable to him for the full value thereof; that the baggage was not delivered to him by defendants or either of them; and that by reason of the carelessness and negligence of the defendants in failing to make delivery, he had been damaged in the sum of $509.

The defendants filed separate answers, each in the form of a general denial.

Briefly, plaintiff's evidence disclosed that he went to the office of the initial carrier in San Francisco, purchased a through ticket to St. Louis, and after paying the required charges for excess baggage, checked his three articles of baggage, consisting of a black hatbox, a straw-matting suit case, and a chocolate-colored leather suit case. His route was over the Southern Pacific Railway Company to Ogden, Utah; from that point to Kansas City, Missouri, over the Union Pacific Railway Company; and from Kansas City to St. Louis, over the Wabash Railway Company.

After arriving in St. Louis, plaintiff went to the Union Station to get his baggage, and was given the black hatbox and the straw-matting suit case, but instead of the chocolate-colored leather suit case, he was offered a small tan-colored leather suit case, which had the words, "San Francisco," stamped upon its end, and which, when opened, was found to contain a bundle of blankets tied with rope, and a number of horseshoes.

The evidence for defendant Southern Pacific Railway Company was that plaintiff had left three pieces of luggage, consisting, as its baggageman recalled, of a large black suit case, a smaller black one, and a tan suit case, which might have been a straw-matting case; that baggage checks were immediately affixed to each of the three pieces; that there was no other baggage on the counter at the time plaintiff's baggage was being checked; that there was no chance whatever that the checks which had been prepared for plaintiff's baggage could have been placed upon other pieces at the time; and that the check introduced in evidence was the one that had been

placed upon the tan or brown suit case which plaintiff had deposited with the baggageman.

Plaintiff offered testimony that the value of the articles contained in the suit case which was never delivered was $409.05, and he admitted that the prayer in his petition for $509 was erroneous.

During the course of the cross-examination of plaintiff by counsel for defendant Southern Pacific Railway Company, inquiry was made at great length concerning thirty-nine separate claims which plaintiff had had over a period of twenty years, some of them being personal injury claims against accident insurance companies with whom plaintiff carried policies, others being personal injury claims against carriers, and others being property claims of a similar nature to the one in suit. While certain of the claims were either refused or abandoned, many of them were concededly paid, and in one instance at least the claim went to final judgment, from which the defendant did not appeal.

In justification of the large number of claims which he had made, plaintiff testified that he had always done a great deal of traveling, both at home and abroad, in consequence of which there had been a correspondingly large number of occasions when it had been his misfortune to sustain personal injury or property loss.

Beginning with the opening statement of counsel to the jury, when reference to the number of previous claims was first made, plaintiff's counsel objected upon the ground that such evidence was irrelevant, improper, and prejudicial; a later timely objection was made that such cross-examination did not bear upon the question of plaintiff's credibility; and finally, at the conclusion of the inquiry, when plaintiff was asked whether it was not true that insurance companies no longer wrote accident policies for him, a motion was made to discharge the jury, upon the theory that merely sustaining an objection to the question was insufficient to cure the error which had been injected into the case.

Plaintiff now argues that the admission, over his objection, of all such evidence, which related wholly to collateral matters, and grew out of other and independent transactions, some of which had occurred twenty years before the trial, and none of which were shown to have been false or fraudulent in any respect or character, was harmful and prejudicial to the point that the judgment in favor of defendant Southern Pacific Railway Company should not stand.

While there is no doubt that as a general rule the cross-examination of a witness, subject to the sound discretion of the court, will be permitted to take a wide range, yet the authorities do place certain definite limitations upon the right of cross-examination in regard to prior claims and proceedings in former trials.

As illustrative of this, the decision of the Supreme Court in Craig v. United Railways Co. (Mo. Sup.), 185 S. W. 205, is of importance, where it had before it a case wherein the right of the street railway company to cross-examine the plaintiff about a former trial was involved. The plaintiff had been in two separate accidents, and in each instance had filed a suit for damages for the personal injuries which she had received. She recovered a judgment in the first suit, which was affirmed on appeal; and then in the second suit she pleaded much the same injuries as she had alleged in her first petition.. Defendant, over the plaintiff's objection, read her first petition in evidence in the second trial, and upon her appeal from a verdict and judgment for the defendant, she urged this matter as error. Speaking of the limits to which it was permissible for the defendant to go in cross-examining the plaintiff about her former suit, the Supreme Court said:

"Defendant had the right to show the extent of the injuries suffered by plaintiff for which she brought her first suit. For that purpose it was proper for it to read in evidence so much of her petition in that cause as referred to her injuries sued for therein. *But it did not have the right to read any other portion of such petition in evidence, nor to cross-examine plaintiff with reference to the facts in that suit, except so far as they showed plaintiff's injuries sued for in that case.* The defendant should be protected from paying for the same injuries twice, by showing the extent of said former injuries, and thus making it possible for the jury to distinguish between the injuries of the latter date, if any, and those involved in the former suit. *On the other hand, the plaintiff should not be called upon to present the merits of her former case to the jury in the trial of this case.*"

According to the text-writers, the leading case on the subject is Palmeri v. Manhattan Ry. Co., 133 N. Y. 261, 30 N. E. 1001, in which the Court of Appeals of New York pointedly held that the offer of the railway company, upon plaintiff's cross-examination, to show that she was an habitual litigant, was properly excluded. As the reason for its ruling, the court said that proof that the plaintiff was an habitual litigant had nothing to do with the issue in the case before it, and, if true, would no more prove her unworthy of belief, than it would follow from her admission of its truth that the litigations which such a tendency had encouraged had not been upon meritorious grounds.

In Shull v. Kallauner, 222 Mo. App. 64, 300 S. W. 554, the Kansas City Court of Appeals quoted the Palmeri case with approval, and in addition announced the rule which is highly apropos to certain aspects of the case at bar, that the taking advantage of any

right which the law gives, such as the institution of a legal proceeding, is not discreditable.

Viewed in the light of the authorities we have quoted, we cannot escape the conviction that it was error of the gravest sort for the court to allow plaintiff to be cross-examined about his claims and suits in the past. If defendant had been able to show a course of dealing or predesigned scheme on plaintiff's part to defraud defendants generally in claims of the character of the one in suit, our conclusion would obviously be different. But such was not the situation. Here there was absolutely no showing of fraud; there was nothing particularly unreasonable or improbable about the number or character of the claims, when it is considered that plaintiff had spent so much of his time traveling over the face of the globe; and not only had many of the claims been honored by payment in substantial sums, but at least one of them had been reduced to final judgment, from which no appeal had been taken, as we have heretofore shown. Certainly there was nothing discreditable in plaintiff's having gone into court to assert the claim upon which he recovered judgment; and even if there were nothing else objectionable in the scope which the cross-examination took, which is not the case, the unwarranted inquiry into this one matter alone, which carried along with it the implication of some impropriety in connection therewith, would be sufficient to constitute reversible error. Consequently the judgment in favor of defendant Southern Pacific Railway Company must be reversed, and the cause remanded for retrial in a manner not inconsistent with the views herein expressed.

The above conclusion leaves for our consideration only the question of the propriety of the court's action in sustaining the demurrers interposed by defendants Union Pacific Railway Company and Wabash Railway Company.

Since the case involves the transportation of plaintiff's baggage in interstate commerce, no point is made about the liability of defendant Southern Pacific Railway Company, the initial carrier, for a loss that occurred anywhere en route. Rather the controversy between the parties centers around the question of whether there could be a joint liability of the carriers to plaintiff, or whether, as counsel for defendant Wabash Railway Company contends, that plaintiff's sole remedy was against the initial carrier.

It has been uniformly held that the Carmack Amendment to the Interstate Commerce Act (U. S. Comp. St., secs. 8604a, 8604aa) merely creates a new liability and right against the initial carrier, and does not abolish the cause of action existing against any succeeding carrier for damage to or destruction of the goods. [American Fruit Growers v. Cleveland, C., C. & St. L. Ry. Co. (Mo. App.), 263 S. W. 488; Letner v. Missouri Pac. R. Co. (Mo. App.), 249 S. W. 155; Johnson v. Missouri Pac. R. Co., 211 Mo. App. 564, 249 S. W.

658; Durnford v. Chicago, B. & Q. R. Co., 213 Mo. App. 93, 246 S. W. 973; Amber v. Davis, 221 Mo. App. 448, 282 S. W. 459.]

Furthermore, the provisions of the Carmack Amendment have in nowise abrogated or changed the usual presumption, that goods shown to have been delivered in good condition to the initial carrier remained in that condition to the time of their delivery to the last or delivering carrier, and that the injury or loss occurred while the goods were in the last carrier's possession. [Chicago & N. W. Ry. Co. v. C. C. Whitnack Produce Co., 258 U. S. 369, 42 S. Ct. 328, 66 L. Ed. 665; State ex rel. v. Taylor, 298 Mo. 474, 251 S. W. 383; Johnson v. Missouri Pac. R. Co., supra; Letner v. Missouri Pac. R. Co., supra; Durnford v. Chicago, B. & Q. R. Co., supra.]

As we understand the law, plaintiff might have sued either of the three carriers individually, and have recovered a valid judgment upon proper proof. In an action against the initial carrier alone it would have been incumbent upon him to show only that a loss had occurred, whether it was upon the lines of the initial carrier, or of any succeeding carrier into whose hands the baggage passed. To have recovered from defendant Union Pacific Railway Company, the intermediate carrier, he would have been required to prove definitely and specifically that the loss occurred on that carrier's lines. In an action against defendant Wabash Railway Company, the terminal carrier, his obligation in legal fiction would have been no different than in the case of a suit against the intermediate carrier, save that he would have had the benefit of the rebuttable presumption that the loss occurred on that company's lines.

Under the practice in our state, since the initial carrier is liable no matter where the loss occurs, it and the succeeding carrier who actually causes the loss may be sued jointly in the same action to recover therefor, and a joint recovery may be had. [Conley v. Chicago, B. & Q. R. Co., 192 Mo. App. 534, 539, 183 S. W. 1111; Otrich v. St. Louis, I. M. & S. Ry. Co., 154 Mo. App. 420, 134 S. W. 665, aff. 164 Mo. App. 444, 144 S. W. 1199. See also, 10 C. J. 543, 553.]

Here there was no showing where the loss, if any, occurred, and consequently, in the absence of a specific showing that it occurred on the lines of defendant Union Pacific Railway Company, the intermediate carrier, that defendant should stand discharged. However, even though he is unable to show where the loss occurred, plaintiff still has the benefit of the presumption that it occurred while in the hands of defendant Wabash Railway Company, the delivering carrier, and that carrier should therefore not be dismissed until and unless it rebuts the force of the presumption standing against it, which it has not yet done.

In support of the court's ruling on the demurrer, counsel for defendant Wabash Railway Company ventures the further suggestion that plaintiff did not content himself with merely stating a

cause of action upon the contract of carriage, but went further and alleged generally that the loss occurred by reason of the carelessness and negligence of the defendants, in consequence of which it was obligatory upon him to prove the charge of negligence as laid. The answer to this point is that even if the case be regarded as one sounding in tort, plaintiff nevertheless successfully bore his burden, for when he adduced evidence showing delivery to the initial carrier, and nondelivery by the terminal carrier, he made out a prima-facie case of negligence. [Chesapeake & O'. Ry. Co. v. Thompson Mfg. Co., 270 U. S. 416, 423, 46 S. Ct. 318, 70 L. Ed. 659; Mt. Arbor Nurseries v. American Railway Express Co., 221 Mo. App. 241, 244, 300 S. W. 1051.]

Accordingly, the Commissioner recommends that the judgment of the circuit court be affirmed as to defendant Union Pacific Railway Company; but that it be reversed as to defendants Southern Pacific Railway Company and Wabash Railway Company, and the cause remanded for a new trial.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed as to defendant Union Pacific Railway Company; but reversed as to defendants Southern Pacific Railway Company and Wabash Railway Company, and the cause remanded for a new trial. *Haid, P. J.*, and *Nipper, J.*, concur; *Becker, J.*, not sitting.